Ingraham, J. :
The complaint alleges that the plaintiff’s testator and the defendant were copartners, the plaintiff’s testator having contributed the entire capital of the copartnership ; that the plaintiff’s testator died in September, 1901; that no final settlement of the accounts of the said partnership was ever made, and asks for an accounting!
The answer admits the copartnership, alleging that it was dissolved on the 1st of May, 1896, by mutual consent. The cause coming on for trial at Special Term, the plaintiff called an accountant, who testified that he had examined the books of the firm and that they had never been closed ; that from the books it appeared that tile plaintiff’s testator had contributed $100,000 as capital; that his individual account showed payments and losses charged to his personal account aggregating $57,470.06, and that there appeared to his credit in the capital account upwards of $43,000; that there was also an account in which the defendant was charged with the cost of a seat in the New York Stock Exchange amounting to $37,078.80 which appears upon the books to be due. There were further accounts of commissions and interest'which showed small debit balances and an expense account which showed a small credit balance; that the last entry upon the books was upon September 23,1896; the books were then introduced in evidence and the plaintiff rested. Counsel for the defendant moved to dismiss the complaint, which was denied, and the court directed an interlocutory judgment directing an accounting and appointing a referee to take and state the accounts. As this appeal brings up this interlocutory judgment for review, the first question presented is whether or not the plaintiff is entitled to judg *591 ment for an accounting. It appearing that the accounts of the copartnership had never been adjusted, and the action having been brought within ten years after the dissolution of the firm, the parties were entitled upon the pleadings and proof to an interlocutory judgment, and that interlocutory judgment should, therefore, be affirmed.
Upon the accounting the referee found that at the termination of the copartnership on May 1, 1896, the assets of the firm, including the sum of $37,243.95, due from Edwin S. Chapin on his personal account for moneys withdrawn from the firm, amounted to $82,430.94, and the liabilities, including the amount due to Edwin S. Chapin for the capital contributed by him, amounted to $100,163.12, showing an excess of liabilities of $17,732.18, being losses appearing in the profit and loss account; that under the copartnership agreement these losses were chargeable to the plaintiff’s testator; that on July 3, 1903, when the affairs of the firm had apparently been liquidated, the net assets of the firm consisted of a balance in the Bank of America amounting to $36.43, and the balance of the account, designated as “A. E. Chapin, Stock Exchange Seat,” amounted to $37,073.80, and that the only liability of the firm was to the plaintiff’s testator for the balance remaining of the capital contributed by him, leaving a net balance of capital due the plaintiff’s testator of $37,115.23, which amount was due from the defendant to the plaintiff. The defendant filed exceptions to the referee’s report, which, however, was confirmed, and from the final judgment entered thereon the defendant appeals.
The only question at issue before the referee was the liability of the defendant for the $37,078.80, which appeared upon the books as a charge against him for the cost of the stock exchange seat. The copartnership books were before the referee, and from these books it appeared that on November 1, 1886, the plaintiff’s testator contributed the sum of $100,000 in cash as capital of the firm, and at the end of each six months there was credited to his personal account interest at six per cent on that sum which became a charge on the profits of the business; that the defendant contributed no capital to the firm, and that at the end of each year the profits and losses were distributed, seventy-five per cent to the plaintiff’s testator and twenty-five per cent to the defendant; that the defendant’s *592 account in the books showed a charge to him on January 20, 1887, for cash $30,110, a credit on May 1, 1888, of $5,423.45, leaving a balance due of $27,000, on which interest was charged each year at six per cent and which resulted in a debit balance on May 1, 1896, of $37,078.80, and it is for this sum that the defendant has been held liable to the plaintiff upon the accounting. Upon this evidence the plaintiff seems to have rested.
The defendant then produced a general release by which the plaintiff’s testator released and discharged the defendant from all demands in law and equity which he had against the defendant “and more particularly by reason of an advance of the sum of twenty-nine thousand dollars ($29,000) made to the said Albert K. Chapin to enable him to purchase a membership in the New York Stock Exchange.” This release was executed and acknowledged by the plaintiff’s testator and was produced from the records of the New York Stock Exchange. The. secretary of the New York Stock Exchange testified that it was customary to take a release where money is advanced or given for the purchase of a membership ; that there was nothing upon the subject in the rules of the New York Stock Exchange; that the witness knew nothing of this paper, except that it was found among the records of the exchange; that when an applicant applies for membership upon the stock exchange he was asked whether he purchased the membership with his own means; that if any part of the money for the purchase of the seat had been given to him the applicant was called upon to procure a release for that amount of money. A brother of the plaintiff’s testator testified that he had a conversation with the plaintiff’s testator in October, 1898, at which the plaintiff’s testator objected to the entry in the books in relation to this stock exchange seat, and said that in case of his death the seat belonged to the defendant; that thát amount should be charged off. The defendant was then called and testified that the account of the stock exchange seat in the ledger was in his handwriting. All conversations between the plaintiff’s testator and the witness in relation to this account or to the stock exchange seat were excluded as being incompetent under section 829 of the Code of Civil Procedure.
The one question presented is whether the defendant is indebted to the copartnership, which consisted of himself and the plaintiff’s *593 testator, for the amount paid for this seat in the New York Stock Exchange which was purchased by the defendant. To prove such indebtedness there was exhibited in the books of the firm an account in which there was charged to the defendant the amount paid for that seat. On behalf of the defendant a general release was proved by which the plaintiff’s testator released and discharged the defendant from all liability of every kind and nature existing in favor of the plaintiff’s testator against the defendant, and particularly from all demands by reason of an advance of the sum of $29,000 made to the defendant to enable him to purchase a membership in the New York Stock Exchange, and it is the effect of this release which is to determine the question as to the defendant’s liability to his brother as.his copartner for the amount which was paid for that seat in the stock exchange. This release was dated the 6th of January, 1887. The firm at that time had been in existence from the first of the previous May. There is no evidence to show when the money was actually paid for the purchase of the stock exchange seat, except the charge in the defendant’s account in the books of the copartnership. The situation at the time of the purchase of this, seat was that the plaintiff’s testator had contributed to this firm all its capital, and was entitled to all of the assets of the firm upon dissolution, except that the defendant was entitled to twenty-five per cent of the profits made each year. The release shows in the most formal manner that the plaintiff’s testator considered the advance of $29,000 made to the defendant to purchase this seat in the stock exchange as an advance made by him for the benefit of the defendant. Whether this money was taken from his capital which plaintiff’s testator had contributed to the firm, or was furnished by him from his private means, seems to me to be immaterial. It was in effect an advance by the plaintiff’s testator to the defendant to enable him to purchase the seat in the stock exchange; and for the amount thus furnished, whether it was paid by the plaintiff’s testator individually, or from his capital contributed to the copartnership, the defendant was liable to the plaintiff’s testator. This being the condition, the plaintiff’s testator formally released the defendant from all liability on account of that advance. The entry in the defendant’s account was dated the twentieth of January, fourteen days after *594 the date of the general release, but the release speaks of the advance as having been made when it was executed, and from an obligation to repay that advance the defendant was released and discharged. If the release had actually discharged the defendant from liability to the plaintiff’s testator for the amount advanced for the purchase of the seat in the exchange, the fact that the defendant had made an entry in the books of the firm charging himself with the amount paid would not create a liability to the plaintiff’s testator or to the copartnership. That entry in the books is an admission of a liability to* the firm and nothing more, and when it appeared that the obligation represented by the charge was released under seal there certainly would be no foundation for holding the' defendant liable for an amount from which he had been released.
The learned referee declined to give effect to this release because it was furnished to the stock exchange under a custom which required a person applying for membership either to state that the membership had been purchased with his own money or that the person who had furnished the money had released the applicant for membership from an obligation to repay the amount that had been contributed for the purchase of the seat, but I cannot see that this would at all affect the legal operation of the release in discharging a claim for the repayment of the sum advanced. The release is produced from the records of the stock exchange, but it was evidently a part of the transaction which resulted in the acquisition of a seat in the exchange and the admission of the defendant to membership, and while a delivery of the release was a necessary part of its execution when delivered to the stock exchange, it became binding upon the plaintiff’s testator. There is no evidence to show that the release was not delivered to the defendant and by him delivered to the stock exchange, but it was delivered for the purpose of releasing the obligation of the defendant to repay the advance to the plaintiff’s testator. The release was either operative or it was not. If it was operative at all it released the defendant from any obligation to the plaintiff’s testator on account of this advance. If it was not operative the plaintiff’s testator’s claim against the defendant still remained in full force and effect. It was found by the learned referee that the release was intended to release the claim of the plaintiff’s testator as against the other members of the stock exchange. *595 I do not see how the legal effect of a general release under seal can be limited by evidence that it was not intended to absolutely discharge the debtor from liability, but there is no evidence to show that such was the intention of the plaintiff’s testator in executing and delivering this release. The fact that the stock exchange required such a release would be a reason why the plaintiff’s testator executed it, but certainly not a reason to show that the release when executed and delivered was not to be given its full force and effect. Nor can it be successfully contended that the delivery of the release to the stock exchange did not inure to the benefit of the defendant. Even if it were shown that the plaintiff’s testator executed and delivered it directly to the stock exchange it was a delivery for the benefit of the defendant who was then an applicant for membership in the exchange and to furnish legal evidence to the exchange that there was no obligation on the paid of the defendant to repay to the plaintiff’s testator the amount advanced for the purchase of the seat. That such a delivery was for the benefit of the person in whose favor it operated is, I think, clear, and upon the execution and delivery of that release all liability of the defendant to the plaintiff, either directly or indirectly, for the amount that had been advanced by the plaintiff’s testator for the purchase of this seat in the stock exchange was released and discharged.
It is claimed by the plaintiff, however, that, as it appears that the payment was made two weeks after the date of the release, the release did not have the effect of destroying an obligation subsequently incurred, but it took effect from the time of its delivery and there was no evidence that the payment was not made until after the release was delivered. The entry in the books of copartnership charging the defendant with the amount was dated two weeks after the date of the release, but this would be entirely immaterial, as ifc was an obligation to repay money advanced for the purchase of the seat in the exchange which was released. What the plaintiff’s testator intended to do, and what he did, was to discharge the defendant from any obligation to repay the amount which was advanced for the purchase of this seat, and this advance is the only foundation for the charge in the books of the copartnership and for which the defendant has been held liable.
I think, therefore, that upon the undisputed evidence there was *596 no existing obligation in favor of the plaintiff’s testator, either as copartner or individually, for the repayment of the sum advanced by him for the purchase of this seat in the exchange arid that the. judgment should, therefore, be reversed and the accounting under the interlocutory judgment taken before another referee, with costs to the appellant to abide the event.
Van Bbunt, P. J., O’Bkien and Hatch, JJ., concurred; Laughlin, J., dissented.